**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**LORENZO LEAK, JR.,**

**Petitioner,**

**v.**

**UNITED STATES OF AMERICA,**

**Respondent.**

**Civil Action No. 3:09cv79**
**Criminal Action No. 3:07cr81**
**(Judge Bailey)**

## OPINION/REPORT AND RECOMMENDATION

### I. Introduction

On June 19, 2009, the petitioner, through retained counsel, filed a Motion Under 28 U.S.C. §

2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody with a memorandum

in support incorporated..  (Dkt.# 73).  The Government was directed to respond on December 17,

2009.[1]  After its December 21, 2009 motion requesting an extension of time (Dkt.# 81) was granted

by Order entered December 23, 2009 (Dkt.# 82), the Government filed its response on January 21,

2010. (Dkt.# 84). Petitioner did not file a reply.

### II. Facts

#### A. Conviction and Sentence

On December 19, 2007, petitioner signed a plea agreement.  He agreed to plead guilty to Count

---

[1] Petitioner's §2255 motion was inadvertently filed only in his criminal case and no civil case was opened until December 19, 2009.

One from an eighty-three count indictment. Count One charged him with Possession of Child Pornography, in violation of Title 18, U.S.C. § 2252A(a)(5)(A). (Dkt.# 32).[2] The maximum penalty for his plea to Count One was specified as imprisonment for a period of ten (10) years, a $250,000.00 fine, and a term of at least three years of supervised release. (Id. at 2). Petitioner also agreed, pursuant to ¶10, to make restitution to the United States in the amount of $13,509.77. (Id. at 4). The parties stipulated and agreed that petitioner's total relevant conduct was eighty-nine (89) images of child pornography as defined at 18 U.S.C. § 2256(8). (Id.). In the plea agreement, the petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the agreement states:

> 11. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions heretofore made by the United States in this plea agreement, Defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus). The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided Defendant complies with the provisions of Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure.

(Id.).

On January 14, 2008, the petitioner, then aged 55 and having a college degree, entered his plea in open court. (Dkt.# 47 at 3 - 4). Petitioner testified that he could read, write and understand English;

---

[2] Counts Two through Eighty-Three were 82 separate charges of knowing, intentional conversion of the money and property of the United States coming into petitioner's hands and under his control in the execution of and color of his office, in the form of U.S. Postal Money Orders, in violation of Title 18, U.S.C. § 1711.

denied having taken any medication, drug or alcohol within the previous 24 hours; denied any auditory impairment or other disability that would prevent his full participation in the hearing; and denied ever having had any treatment for mental illness or drug addiction. (Id.). During the plea hearing, the Assistant U.S. Attorney ("AUSA") read aloud or summarized in open court each paragraph of the plea agreement, including the paragraph 11 *supra*. (Id. at 6 - 9). The Court specifically asked petitioner if he understood the waiver of his appellate and post-conviction relief rights and petitioner indicated that he did. (Id. at 9 - 10). The Court inquired of defense counsel whether he felt that petitioner fully understood the waiver and its importance, and counsel replied "I do, Your Honor. I have had numerous meetings with Mr. Leak and we discussed the plea in length." (Id. at 10). The Court asked petitioner whether he and his counsel had reviewed the plea agreement in detail before he signed it, and petitioner stated "Yes, Your Honor, I did." (Id.).

The Court explained the elements of the charge of Count One that the Government would have to prove beyond a reasonable doubt to petitioner; petitioner indicated his understanding. (Id. at 12). The Court then informed petitioner that the maximum sentence for the crimes which he was pleading would be imprisonment for a period of ten years, a fine of $250,000 and a term of at least three years of supervised release (Id.), but that the ultimate sentence could be greater than that estimated by his counsel; petitioner indicated that he understood. (Id. at 14 and 15). The Court specifically asked petitioner whether he understood that the length of his sentence could not be determined by anyone until the pre-sentence report ("PSR") was completed and petitioner indicated his understanding. (Id. at 14, 15, and 22). The Court then summarized the rights that petitioner was giving up by pleading guilty. (Id. at 15 - 17). To establish a factual basis for the plea, the Government presented the testimony of Karyn Lefebvre, a Special Agent with the United States Postal Inspection Service. (Id. at 17 - 21). The petitioner did not contest the factual basis of the plea.

After the factual basis for the plea was presented, the petitioner entered his plea. The Court asked petitioner if he was, in fact, guilty of Count One of the indictment and petitioner advised the Court that he was. (Id. at 21). When asked, petitioner denied that anyone had attempted to force or threaten him to plead guilty. (Id.). He denied that he was pleading guilty to protect anyone. (Id. at 22). The Court asked petitioner if his lawyer had done a good job representing him and he responded "[y]es, Your Honor." (Id. at 22). The Court further asked petitioner whether he thought that there was any thing he thought that his lawyer left undone, or anything that he thought his lawyer did improperly, and petitioner stated "[n]o, Your Honor." (Id.). At the conclusion of the hearing, the Court determined that: petitioner was competent; he had made his plea freely and voluntarily, with full understanding of its consequences; that there was a basis in fact for the plea and that the elements of the crime had been established beyond a reasonable doubt. (Id. at 48). Petitioner did not object to the Court's finding.

On April 1, 2008, petitioner appeared before the court for sentencing. Petitioner was found to have a base and adjusted offense level of 18 with a two-level enhancement for involvement of the prepubescent minor; a four-level enhancement for the type of depiction in the materials; a two-level enhancement for the use of a computer; a two-level enhancement for the number of images involved; and a further two-level enhancement for a breach of trust, resulting in a total adjusted offense level of 30. He received a two-level reduction for acceptance of responsibility. (Dkt.# 48 at 5 - 6). An additional one-level reduction was granted, resulting in an total offense level of 27. (Id. at 6). With a criminal history category of I, the Court found that the sentencing guidelines called for imprisonment for seventy to eighty-seven months; supervised release of five years to life; a fine of $12,500 to $125,000; restitution of $13,509.77 and a mandatory special assessment of $100. (Id.). The Court then heard statements from counsel. Defense counsel offered no objections, but advised the Court that

petitioner took full responsibility for his actions and offered his apologies. (<u>Id</u>. at 7 - 8). He pointed

out that petitioner's own attempts to delete the pornographic images of children from among the other

pornographic images on his computer indicated that he did not want them. (<u>Id</u>. at 7). He assured the

Court that petitioner had already made arrangements to transfer the money for restitution. (<u>Id</u>. at 7 -

8). Instead of a formal downward departure motion, counsel asked that the Court note the long

sentence petitioner was facing, as well as the impact of his conviction on his family's finances and his

future employment prospects when considering an appropriate fine. (<u>Id</u>. at 8). Petitioner invoked his

right of allocution, apologizing for his transgressions. (<u>Id</u>. at 8 - 9). The Government asked for a

sentence at the lowest end of the Guideline. Taking all necessary information into consideration, the

Court sentenced petitioner to serve a total term of 70 months imprisonment. (<u>Id</u>. at 10).

**B.**     **<u>Direct Appeal</u>**

Petitioner filed a notice of appeal on April 10, 2008. (Dkt.# 44). On appeal, he argued that

the District Court erred in finding a factual basis to support his plea. On April 6, 2009, by unpublished

*per curiam* opinon, the Fourth Circuit Court of Appeals found no error in the Petitioner's conviction

and affirmed the District Court's decision. Petitioner neither filed for rehearing *en banc* nor did he

petition for writ of *certiorari* with the United States Supreme Court.

**C.**     **<u>Federal Habeas Corpus</u>**

**<u>Petitioner's Contentions (Dkt.# 73</u>)**

Petitioner raises multiple grounds of ineffective assistance of counsel:

1) counsel failed to investigate the elements of the charges and research the law, in that he:

> (a) failed to correctly advise petitioner that the Government had to prove that he
> *knowingly*, rather than inadvertently downloaded child pornography; thus petitioner
> did not realize he had a defense to the charge;

> (b) failed to advise petitioner that the Government had to prove that the images

depicted a real, as opposed to computer-generated image of a minor below the age of 18;

(c) failed to accurately inform petitioner about the possible guideline sentence he would receive; and

(d) counsel coerced petitioner's guilty plea by providing erroneous advice that mere possession of child pornography was sufficient to establish guilt, thus petitioner's plea, since it was based on a misunderstanding of the law, was not knowing, intelligent or voluntary.

2) After the plea, counsel failed to investigate petitioner's suggestions for possible mitigating evidence for sentencing.

3) At sentencing, counsel completely failed to advocate for petitioner by:

(a) presenting no mitigating evidence;

(b) failing to file any objections to the PSR;

(c) failing to request a variance;

(d) not presenting any "real oral argument" on petitioner's behalf; and

(e) failing to object to multiple improper guideline enhancements.

As relief, petitioner requests that his conviction be vacated and his case remanded for a new trial, or alternatively, his sentence be vacated and his case remanded for re-sentencing.

### Government's Response (Dkt.# 84)

The Government contends that

1) petitioner's pre-plea complaints of ineffective assistance of counsel were already raised on appeal and cannot now be recast under the guise of a collateral attack.

2) Petitioner's complaints of counsel's deficiencies at sentencing cannot generally be raised in a habeas corpus petition; complaints regarding the Court's calculation of a sentence are more properly brought on direct appeal and petitioner, by failing to do so, has procedurally defaulted them. Further, he has not demonstrated cause, actual prejudice or actual innocence, and thus his claims must be denied.

3) Petitioner's claim that counsel never informed him that knowing possession of child pornography is an element of the offense fails. The Supreme Court has held that the language

of criminal statutes are must be given their commonsensical meaning; here, there was sufficient circumstantial evidence of petitioner's knowing possession of the images and his willful blindness to that fact.

4) The Fourth Circuit Court of Appeals has held that no expert evidence is required to prove the age of depicted persons in pornographic images.

5) Petitioner's claim that counsel did not correctly inform him of his potential guideline sentence fails; petitioner testified at his plea hearing that no one had predicted the sentence he would receive and that he had not been given any assurances as to what the final disposition would be. Further, inaccurate predictions as to likely sentence do not amount to ineffective assistance of counsel. Moreover, petitioner has not alleged that with regard to any of his post-plea allegations of deficiencies, that but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.

6) Petitioner has already raised the issues of the knowing versus inadvertent possession and the age of the persons depicted in the images on direct appeal, to support his argument that the facts were insufficient to support his guilty plea, and thus he cannot now raise them again.

7) An objection to the position of trust sentencing enhancement would not be well taken.

8) The fact finder determines the applicability of enhancements for child pornography images depicting sado-masochistic conduct and pre-pubescent minors. Counsel's failure to object to the enhancements was likely strategic, in that the objections might cause the sentencing judge to personally study all of the images immediately before imposing sentence. Furthermore, these issues are procedurally defaulted by petitioner's failure (with new appellate counsel) to raise them on appeal.

9) Although the U.S. Supreme Court has recognized that effective representation of counsel includes the presentation of mitigation evidence to a sentencing jury in a capital case, it has not been held that presentation of mitigation evidence is required at sentencing in a non-capital case. Furthermore, even if counsel were deficient in not presenting mitigation evidence at sentencing, because petitioner received a sentence at the lowest end of the advisory guideline, he cannot prove prejudice.

10) The Court's imposition of an individualized sentence through the application of the guidelines and § 3553(a) factors was appropriate.

D.     **Recommendation**

Based upon a review of the record, the undersigned recommends that petitioner's § 2255 motion be denied and dismissed from the docket because petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack his conviction. Further, petitioner's post-plea claims

of ineffective assistance of counsel, although falling outside of the waiver, have no merit.

## III.  Analysis

### A.  Burden of Proof

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack.  28 U.S.C. § 2255.  A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence."  Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

### B.  Waiver

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.  Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977).  However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality."  Id.  "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement."  United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal."  The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused."  Id.  After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth

Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel ("IAC") claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is

a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid

waiver.  In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and
> intelligently agreed to waive the right to appeal. Although       this determination is often
> made based on adequacy of the plea colloquy -- specifically, whether the district court
> questioned the defendant about the appeal waiver – the issue ultimately is evaluated
> by reference to the totality of the circumstances. Thus, the determination must depend,
> in each case, upon the particular facts and circumstances surrounding that case,
> including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a

whole, the plea colloquy, and the defendant's ability to understand the proceedings.  Id.  If the Court

finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the

waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea

agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground  that "the

proceedings following entry of the guilty plea – including both the sentencing hearing itself and the

presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth

Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea

agreement.  Attar, 38 F.3d at 732-33.  Therefore, upon first blush it appears that IAC claims arising

after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on

direct appeal.  In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that

although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts

have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to

waivers of the right to file a direct appeal.  Braxton at 502 (citing United States v. Cannady, 283 F.3d

641,645 n. 3 (4th Cir. 2000) (collecting cases); <u>Butler v. United States</u>, 173 F. Supp. 2d 489, 493

(E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct

appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' <u>United States v. King</u>, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in <u>Attar</u> applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' <u>United States v. White</u>, 307 F.3d 336, 344 (5th Cir. 2002).

<u>Braxton</u>, 358 F. Supp. 2d at 503.

The Court in <u>Braxton</u> further noted that the Tenth Circuit has also distinguished collateral-

attack waivers from the situation in <u>Attar</u> and that the Fourth Circuit's holding in <u>United States v.</u>

<u>Broughton-Jones</u>, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction. <u>Braxton</u>, 358

F. Supp. 2d at 503, n. 2. Finally, the <u>Braxton</u> Court found it persuasive that the majority of circuits

to have confronted this question "have held that collateral attacks claiming ineffective assistance of

counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate

directly to the plea agreement or the waiver, are waivable." <u>Id.</u> at 503. (collecting cases).

The unpublished *per curiam* decision in <u>United States v. Morris</u>, 247 Fed. Appx. 459; 2007

U.S. App. LEXIS 21976 (4th Cir. 2007) indicates that when the district court conducts a thorough Rule

11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below

the statutory maximum, the record established that defendant made a knowing and voluntary waiver

of rights. Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights contained in the plea agreement and petitioner said that he did. (Dkt.# 47 at 9). Further, petitioner specifically testified that he understood that, incident to his plea agreement, in exchange for some of the concessions by the Government, he was waiving his right to appeal his sentence or to collaterally attack the legality of the guilty plea and sentence, as long as it was within the maximum sentence of ten years. (Id. at 9 - 10 and 12). His sentence was 70 months imprisonment, or 5.83 years. The undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly and voluntarily waived the right to collaterally attack his conviction and sentence and to file this § 2255 motion, thus precluding a review of his claims enumerated herein as Ground One (a), (b), (c), and (d).

However, a waiver analysis may not be dispositive of all of the issues in this petition. To the extent petitioner has alleged that counsel was ineffective after the entry of the guilty plea (claims previously enumerated herein as Grounds Two, Three (a), (b), (c), (d) and (e)), those claims will be given review.

**C.**    **Ineffective Assistance of Counsel**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so

serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Pursuant to the waiver of appellate and post-conviction relief rights in his plea agreement, petitioner validly waived the right to bring any claim of ineffective assistance of counsel occurring prior to the entry of his guilty plea. Therefore, petitioner's Ground One (a), (b), (c), and (d) claims are all waived.[3]

**Ground Two: Whether Counsel's Performance was Deficient when he [allegedly] Failed to Investigate Petitioner's Suggestions for Possible Mitigating Evidence for Sentencing.**

---

[3] Petitioner's Ground One (a), (b) and (d) claims have already been raised and rejected by the Fourth Circuit, albeit raised there in his claim that this Court erred in finding a factual basis to support his plea. Petitioner is now raising them under the guise of ineffective assistance of counsel claims. Because the Fourth Circuit Court of Appeals has already rejected petitioner's claims in this regard, in addition to being waived, they are now also procedurally barred.

Petitioner asserts that he informed counsel that he had an extensive history of providing service in the community and that there were a number of people locally who could speak to that. Despite this, he contends that counsel did not contact those individuals for interviews. Further, in his pre-plea argument that the pornographic images of children were accidentally downloaded among other pornographic images, petitioner maintains that there had never been any indication that he was sexually interested in children. He contends that he requested counsel retain a psychiatric expert to prove he was not sexually attracted to children, only to adult women, but that counsel did not do so.

Claims of ineffective assistance of counsel for failure to investigate are analyzed in light of all circumstances, and while "[counsel] could well have made a more thorough investigation than he did. [] [n]evertheless, in considering claims of ineffective assistance of counsel, '[w]e address not what is prudent or appropriate, but only what is constitutionally compelled.'" Burger v. Kemp, 483 776, 794 (1987) (quoting United States v. Cronic, 446 U.S. 648, 665 n. 38 (1984)).

The Court finds petitioner's allegations do not warrant relief because petitioner has failed to show counsel's conduct was deficient or prejudicial. He has not identified who the potential witnesses were or what the interviews with them would have disclosed, had counsel had them. Furthermore, Title 18 § 2252A(a)(5)(A), Certain Activities Relating to Material Constituting or Containing Child Pornography, states in pertinent part:

> (a) Any person who— (5) either—
> (A) in the special maritime and territorial jurisdiction of the United States, or on any land or building owned by, leased to, or otherwise used by or under the control of the United States Government, or in the Indian country (as defined in section 1151), knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography[.]

18 U.S.C. § 2252A(a)(5)(A).

Even if counsel had obtained the psychological profile petitioner now alleges that he requested,

it would not have changed the outcome of petitioner's sentencing, because petitioner's personal sexual appetite is irrelevant to the charge. He had already "admitted . . . viewing and downloading child pornography" (Dkt.# 41 at 9), and had stipulated to the relevant conduct of knowing possession of 89 images of child pornography in his plea agreement. (Dkt.# 32, ¶9 at 4).

A claim of ineffective assistance of counsel cannot be established on the general allegation that that additional witnesses should have been called in mitigation. <u>Bassette v. Thompson</u>, 915 F.2d 932, 940 - 41 (4th Cir. 1990) (a petitioner must explain what additional evidence would have been obtained from the additional interviews or meetings.). Second, petitioner has failed to demonstrate that defense counsel's failure to interview potential witnesses or retain a psychiatric expert caused the Court to sentence him any more harshly than it otherwise would have. Ppetitioner already received a sentence at the lowest possible end of the Guideline. Thus, he cannot show prejudice. Finally, petitioner, because he is alleging ineffective assistance of counsel following the entry of a guilty plea, has failed to meet his burden of showing that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

## <u>Ground Three (a),(b), (c), (d) and (e)</u>:[4] **Whether Counsel's Performance was Ineffective at Sentencing.**

Petitioner contends that at sentencing, counsel was ineffective because he completely abnegated his duty to zealously represent him. Specifically, petitioner alleges that counsel failed to present any mitigating evidence in his behalf; never filed any objections to the PSR; failed to request

---

[4] These claims, since they all arise out of counsel's alleged deficiencies at the sentencing hearing, have been combined here for expediency.

a variance; failed to object to multiple improper guideline enhancements;[5] and did not present any

"real oral argument" on his behalf.

A review of the sentencing hearing transcript reveals this exchange:

THE COURT: Mr. Leak, have you received the presentence investigation report and reviewed it with the - - with your lawyer?

THE DEFENDANT: Yes, sir, I have, Your Honor.

THE COURT: Has the Government received and reviewed the presentence investigation report?

MR. CAMILLETTI: Yes, Your Honor.

THE COURT: Are there any objections to the - - or issues with respect to the presentence investigation report?

MR. CAMILLETTI: None from the Government.

MR. BOTTNER: None from the defendant, Your Honor.

(Dkt.# 48 at 4).

After the PSR was accepted, filed and made part of the record, the Court made its tentative

findings as to the applicable guidelines:

THE COURT: . . . The base offense level is 18. There is a two-level enhancement for involvement of the prepubescent minor. A four-level enhancement for the type of depictions in the materials. A two-level enhancement for use of a computer. And a two-level enhancement for the number of images involved. There is a further two-level enhancement for a breach of trust. Resulting in a total adjusted offense level of 30. There is a two-level reduction for acceptance of responsibility. What is the Government's position with regard to the third level?

MR. CAMILLETTI: So moved, Your Honor.

THE COURT: That motion is granted, and an additional level reduction will be granted, resulting in a total offense level of 27. The criminal history category is I.

---

[5] Petitioner received enhancements for: possessing images depicting prepubescent minors, images depicting sado-masochism involving children, and a two level enhancement for his abuse of his position of trust as a postmaster.

With a total offense level of 27 and criminal history category of I, the guidelines call for incarceration of 70 to 87 months, no eligibility for probation, supervised release of five years to life[.]

. . .

Are there any objections to the tentative findings?

MR. CAMILLETTI: No, Your Honor.

MR. BOTTNER: No, sir.

THE COURT: All right. It is the ruling of this Court that the guidelines as announced will be the guidelines applicable to the sentencing in this case. I'll now recognize defense counsel for a statement on behalf of the defendant.

MR. BOTTNER: Thank you, Your Honor. I'll be brief. Mr. Leak in this matter takes full responsibility for his actions in this case that violated the law. He had - - he had thousands of pornographic images on his computer that were described by the Government as a panoply of interests. All kinds of different things.

At the time the Government found out about these images, it was due to Mr. Leak's attempts to delete specifically these images from his work computer. That does not lessen the crime that occurred, but I think does go to some extent to the - - his knowledge of the fact that he did not want these pictures. That does not really affect us though in the overall situation reading of statutory law. And the case law would indicate that just mere possession and knowledge of that, and he certainly knew he possessed them, makes him guilty.

He has requested a withdrawal from his retirement amount which should be wired to him shortly which will allow him to pay the restitution of $13,509.77 in full. And he intends to do that as soon as possible once the funds are received.

We did not do a formal downward departure motion as defined, Your Honor. I would point out that he is going to be incarcerated for a very long period of time. His wife is going to be left to fend for herself. And other than his employment, which he won't have, with the Postal Service anymore, there will not be a lot of funds for his wife to survive on. And probably he certainly will not be finding a public sector job again. And it will be very difficult to find a similar or as reasonably employable job in the future. So I hope the Court will take that into consideration in determining an appropriate fine.

*But as to the pictures and misappropriation of funds, Mr. Leak has requested nothing but that I convey - - I know he is going to convey his sincerest apologies and full acceptance of these crimes. He has no defense. They were there. He did*

17

*misappropriate the funds, and I know he's going to apologize for that. But that's all I have, Your Honor.*

THE COURT: Thank you. Mr. Leak, do you wish to make a statement to the Court?

THE DEFENDANT: Yes, Your Honor, I do. I would like to apologize for my transgressions to Your Honor, the Court, to my family, all Government officials, legal counsel, and the citizens of the community of Falling Waters, West Virginia.

The charge of child pornography I fully understand. Once I obtained those images, I did my best to have them deleted. I deplore the abuse of children in this manner. I have no interest in child pornography. I am also a father of three children.

The charge of misappropriating government funds, I am in the process of making full restitution to the Postal Service. I take full responsibility of [sic] my error in judgment and not upholding the oath of postmaster to the Falling Waters post office. I have lost my career, my friends, and my integrity.

I apologize for being a burden to the judicial system. And I will be a prisoner - - a model prisoner - - I'm sorry, Your Honor. I'll be a model probationer, I will be a model prisoner, and I will return to society a model citizen. I will never again appear in this court, or any other court. Thank you, Your Honor.

(Id. at 5 - 9) (emphasis added).

It is clear from a review of the record that petitioner testified under oath that he had had the opportunity to meet with defense counsel prior to the sentencing hearing, to go over the PSR and frame any objections to it. Petitioner, a professional with a college degree and a long career in the U.S. Postal System, was capable of expressing himself, as attested by his allocution. However, at sentencing, in stark contrast to the position he now asserts, despite being given the opportunity to speak directly to the Court, he voiced no objection to any portion of the PSR. He did not dispute any of the sentencing enhancements the Court had just announced. He indicated no surprise, dissatisfaction or disagreement with the position taken by counsel. He did not protest when counsel said "[w]e did not do a formal downward departure motion as defined[.]" Instead, he calmly and freely admitted to having committed the transgressions and apologized profusely.

18

It is also apparent that, contrary to petitioner's present claims that counsel failed to present any real oral argument, request a variance, object to sentencing enhancements, present mitigating evidence or advocate for him at all, counsel's statement to the Court indicated that petitioner's primary concern at the time appeared to be the size of a potential fine. The record shows that counsel appears to indicate that he was acting on petitioner's *specific instructions* when he advised the Court: " . . . as to the pictures and misappropriation of funds, *Mr. Leak has requested nothing but that I convey - - I know he is going to convey his sincerest apologies and full acceptance of these crimes*. He has no defense. (Id. at 8) (emphasis added). The record does not show that petitioner appeared surprised or upset with this statement by counsel. To the contrary; petitioner's allocution immediately following was completely consistent with counsel's position.

In death penalty cases, counsel must adequately investigate and present evidence in mitigation of guilt at sentencing. Williams v. Taylor, 529 U.S. 362, 390 - 91, 120 S. Ct. 1495; 146 L. Ed. 2d 389 (2000). However, it has not been held that presentation of mitigating evidence is required at sentencing in a non-capital case. Even in a capital case, in assessing a lawyer's performance in this area, the Supreme Court has emphasized that "Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." Lovitt v. True, 403 F.3d 171, 179 (4th Cir. 2005) *quoting* Wiggins v. Smith, 539 U.S. 510, 533, 156 L. Ed. 471, 123 S. Ct. 2527 (2003).

Even if counsel's decision not to challenge the sentencing enhancements for the various types of pornographic images of children were not based on petitioner's wishes at the time, counsel's decision not to pursue that approach might well reflect "not incompetence, but rather a sound strategic choice." Lovitt, *supra* at 179, *quoting* Rose v. Lee, 252 F.3d 676, 693 (4th Cir.). As the Government correctly noted, the fact-finder is the one who decides the ages of the children in pornographic images.

U.S. v. Gallo, 846 F.2d 74 (4th Cir. 1988) (unpublished), *per curiam.*  As such, challenging an enhancement for  pornographic images children on the basis that they were *not* images of  pre-pubescent children, or that sado-masochism was *not* depicted, would likely require the sentencing judge to personally review them immediately before sentencing.  Like Lovitt, *supra* at 179, counsel would have realized that such an approach was a "classic double-edged" situation that might well cause more harm than good.  When such a situation is reviewed, "every effort [must] be made to eliminate the distorting efforts of hindsight."  Strickland, *supra* at 689.

Similarly, counsel's decision not to object to the enhancement for petitioner's abuse of trust of his position as postmaster was likely strategic as well, and was consistent with petitioner's apology and admission in his allocution for his "error in judgment . . . [in] not upholding the oath of postmaster to the Falling Waters post office."[6]  Even if it had not been a strategic decision, an objection on this basis would likely not have been successful.  Under U.S.S.G. § 3B1.3, a district court must increase the defendant's sentence by two levels if it determines that the defendant abused a position of trust and that abuse significantly contributed to the commission or concealment of the crime.  U.S. v. Akinkoye, 185 F.3d 192, 203 (4th Cir. 1999).  The Fourth Circuit looks to several factors in determining whether a given defendant has abused a position of trust.  Those factors are 1) whether defendant had either special duties or special access to information not available to other employees; 2) the extent of discretion the defendant possessed; 3) whether the defendant's acts indicate that he is more culpable than others who are in positions similar to his and who engage in criminal acts; and 4) viewing the

---

[6] That oath is set forth in 39 U.S.C. § 1011, Oath of office:
Before entering upon their duties and before receiving any salary, all officers and employees of the Postal Service shall take and subscribe the following oath or affirmation:
"I, ----------, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter." 39 U.S.C. § 1011.

entire question of abuse of trust from the victim's perspective. <u>Akinkoye</u>, *supra* at 203. Here, defendant was the postmaster, an supervisory official with special access to the computer on which he downloaded the pornographic images of children. As such, his position made detection of his crime more difficult, which is the basis for the enhancement. As for the victim's perspective, the Fourth Circuit has held that a victim in an offense under 18 U.S.C. 2252, the companion statute to the one petitioner is charged with violating, "is society in general." <u>U.S. v. Toler</u>, 901 F.2d 399, 403 (4th Cir. 1990). The enhancement for abuse of trust was proper; counsel had no basis on which to object.

The Court finds petitioner's allegations do not warrant relief because petitioner has failed to show counsel's conduct was deficient or prejudicial. Petitioner received a 70-month sentence, the lowest possible sentence under the guidelines, well below the potential maximum ten-year sentence that he was informed of, before he entered his plea. Further, because petitioner is alleging post-plea ineffective assistance of counsel, he has a higher burden to meet. He has failed to show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, *supra* at 59.

Moreover, to the extent that the petitioner argues cumulative error based on his four grounds of ineffective assistance of counsel at sentencing, a cumulative-error analysis is neither necessary nor appropriate in this case. "The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error" and "[t]he purpose of a cumulative-error analysis is to address that possibility." <u>United States v. Rivera</u>, 900 F. 2d 1462, 1469 (10th Cir. 1990). Therefore, a "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error." <u>Fisher v. Angelone</u>, 163 F.3d 835, 853 n. 9 (4th Cir. 1998). In this case, the Court has not found any individual constitutional errors, therefore, there is no need for a cumulative-error analysis.

**V. Recommendation**

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion and **DISMISSING this case with prejudice**.

Further, petitioner's requests that his conviction be vacated and his case remanded for a new trial, or alternatively, his sentence be vacated and his case remanded for re-sentencing, should be **DENIED** as moot.

**Within fourteen (14) days** after being served with a copy of this opinion/report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Chief United States District Judge John Preston Bailey. Failure to file timely objections to this Opinion/Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: February 22, 2011

                                        s/ *John S. Kaull*
                                        JOHN S. KAULL
                                        UNITED STATES MAGISTRATE JUDGE