**LORENZO LEAK, JR.,**

Petitioner,

**v.**                                          **CRIMINAL NO. 3:07-CR-81**
                                               **CIVIL NO. 3:09-CV-79**
                                               **(Judge Bailey)**

**UNITED STATES OF AMERICA,**

Respondent.

## ORDER ADOPTING OPINION/REPORT AND RECOMMENDATIONS

**I.      Introduction**

On this day, the above-styled matter came before this Court for consideration of the

Opinion/Report and Recommendation of United States Magistrate Judge John S. Kaull.

Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Kaull for

submission of a report and a recommendation ("R & R").  Magistrate Judge Kaull filed his

R & R on February 22, 2011 [Crim. Doc. 98 / Civ. Doc. 2].  In that filing, the magistrate

judge recommended that this Court deny the petitioner's application under 28 U.S.C. §

2255  [Crim. Doc. 73 / Doc. 1] and to dismiss the same with prejudice.

Pursuant to 28 U.S.C. § 636 (b)(1)(c), this Court is required to make a *de novo*

review of those portions of the magistrate judge's findings to which objection is made.

However, the Court is not required to review, under a *de novo* or any other standard, the

factual or legal conclusions of the magistrate judge as to those portions of the findings or

recommendation to which no objections are addressed.  ***Thomas v. Arn***, 474 U.S. 140,

1

150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); **Snyder v. Ridenour**, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91, 94 (4th Cir. 1984). Objections to Magistrate Judge Kaull's R & R were due within fourteen (14) days of being served with a copy of the same, pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). Defendant Leak timely filed objections to the R&R on March 8, 2011 [Doc. 100]. Accordingly, this Court will review the portions of the R&R to which objections were filed under a *de novo* standard. The remaining portions will be reviewed for clear error.

## II.     Factual and Procedural History

On December 19, 2007, defendant Leak plead guilty to Count 1, possession of child pornography, of an eighty-three (83) count Indictment. The parties stipulated that the defendant's total relevant conduct included eighty-nine (89) images of child pornography. Further, pursuant to the plea agreement, the defendant agreed to make restitution to the United States in the amount of $13,509.77. Following a thorough Rule 11 plea hearing, Magistrate Judge David J. Joel accepted the plea of guilty to Count 1 and deferred acceptance of the plea agreement and adjudging the defendant guilty until sentencing. At the April 1, 2008, sentencing hearing held by the undersigned, this Court accepted the plea agreement and adjudged the defendant guilty of the crime to which he pled. This Court then announced its tentative findings as to the applicable guideline range and, there having been no objections thereto, this Court ruled that the guidelines as announced would be the guidelines applicable to defendant Leak's sentence. The guidelines called for a term of

2

incarceration of 70-87 months. The Court imposed the lowest end of the range of seventy (70) months.

This matter now comes before this Court upon consideration of defendant Leak's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Crim. Doc. 73 / Civ. Doc. 1], filed on June 19, 2009. The Government filed its response on January 21, 2010 [Doc. 84]. The motion raises multiple grounds for relief. This Court, however, has reduced its analysis to two parts: (1) Whether the petitioner's guilty plea was made knowingly, intelligently, and voluntarily so as to permit him to withdraw his guilty plea; and (2) Whether defense counsel's alleged deficiencies at the pre-sentencing and sentencing stages raised to the level of ineffective assistance of counsel.

On direct appeal, the Fourth Circuit Court of Appeals found a sufficient basis in fact under Rule 11(b)(3) and that the defendant admitted to that basis in fact. *See **United States v. Leak***, 320 Fed.Appx. 167 (4th Cir. 2009) (unpublished).[1] Accordingly, the Fourth Circuit affirmed this Court's acceptance of defendant Leak's guilty plea.

## III. Discussion

### A. Motion to Withdraw Guilty Plea

It is the petitioner's position that 18 U.S.C. § 2252A(a)(5)(A) contains an element of intent; it does not. Nevertheless, the petitioner argues that had he been informed of an intent requirement to prove possession of child pornography, he would not have pled guilty,

---

[1] This Court notes the Fourth Circuit Court of Appeals denied the Government's motion to dismiss the appeal on waiver grounds because the issue raised on appeal was not within the scope of the waiver contained in the plea agreement. *See **United States v. Blick***, 408 F.3d 162, 168 (4th Cir. 2005).

would not have entered into the plea agreement, and would not have agreed to a waiver of collateral attack.

At the outset, this Court notes that new counsel incorrectly applies the revised version of the applicable statute which, by Amendment dated October 8, 2008, inserted "or knowingly accesses with intent to view . . .."  The applicable version at the relevant time, however, was 18 U.S.C. § 2252A(a)(5)(A) (2006), as amended by the Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, 122 Stat. 4001.  This Court notes the newly-inserted provision simply provides an "or" clause.  This certainly does not obviate the first part of section (5)(A) which only requires "know[ing] possess[ion]."  Accordingly, this Court will continue its analysis working under the appropriate statutory framework.

### 1.    18 U.S.C. § 2252A(a)(5)(A) Contains No Element of Intent

§ 2252A(a)(5)(A) requires that a defendant "on land and in a building owned by, leased to, or otherwise used by or under the control of the United States Government, . . . knowingly possess[ ] any . . . computer disk, or any other material that contains an image of child pornography . . .."  While many courts, in many contexts, have held that the term "knowingly" as used in certain statutory language necessitates further definition, they have specifically declined to so for purposes of § 2252A(a)(5)(A).  Such statutes typically provide explicitly the additional element of intent.  Seen in this light, the fact that there exists no added intent element of the face of § 2252A(a)(5)(A) bolsters the argument that Congress deliberately refrained from including such an element.  *See **United States v. Dwinells**, 508 F.3d 63, 68 (1st Cir. 2007).

In **United States v. Koch**, 625 F.3d 470 (8th Cir. 2010), the court analyzed the "knowingly" element contained in the subject statute. In that case, the defendant was found to be in possession of over 100 images of child pornography, which were found on his computer and flash drive. The defendant, relying on **United States v. Kain**, 589 F.3d 945, 950 (8th Cir. 2009), and **United States v. Stulock**, 308 F.3d 922, 925 (8th Cir. 2002), unsuccessfully argued that while the evidence showed that he used the computer and flash drive, that did not give rise to a reasonable inference that he "knew" the child pornography existed. **Koch**, 625 F.3d at 478. The two cases cited by the defendant in **Koch**, however, "refer to the presence of child pornography in internet browser cache files on a defendant's computer, images which were automatically stored as a result of internet browsing." **Id**. at 478-79. The reasoning in the above-mentioned cases, without citing to any authority whatsoever, provides that "one cannot be guilty of possession for simply having viewed an image on a web site, thereby causing the image to be automatically stored in the browser's cache, without having purposely saved or downloaded the image." **Stulock**, 308 F.3d 925; Cf. **United States v. Tucker**, 305 F.3d 1193 (10th Cir. 2002), cert. denied, 537 U.S. 1223 (2003)(defendant knowingly possessed child pornography where web browser automatically saved images onto his computer and the defendant was aware that his browser automatically cached everything). Such appears to be one of the few exceptions to the strict "knowingly" requirement in § 2252A(a)(5)(A). The court, however, found Koch's reliance on the above to be misplaced. **Koch,** supra. at 478. The distinguishing characteristic, the court held, was that "the images . . . were found on Koch's computer and flash drive in files that . . . had to be creat[ed] manually." **Id**. at 479. This Court agrees that these cases do not create a new element of intent; rather, this Court finds such reasoning

specifically goes to the "knowing" element. Finally, the court noted additional evidence showing that many of the images were deleted was sufficient to support the finding that Koch "knowingly possessed" the images of child pornography. *Id.*

In the case at bar, sufficient evidence exists to support a finding that defendant Leak "knowingly possessed" child pornography. Even assuming, *arguendo*, that this Circuit adopted the exception carved out in **Kain** and **Stulock**, the facts of defendant Leak's case would nevertheless fail to fall into such an exception. Defendant Leak's circumstances are more akin to those in **Koch**. Like Koch, defendant Leak did not obtain the images of child pornography in his internet browser cache simply by browsing the Internet. Rather, the report from the United States Postal Service Office of Inspector General indicated that various .jpeg and movie files were saved using female names, unique file names, and file names describing sexual acts. This Court will spare the reader the vulgarity of the given names. Special Agent Flood noted the files were *saved on the hard drive*, within a particular folder which had been *downloaded* from the Internet. The thousands of downloaded images consisted of a rather eclectic range of distasteful content, but most importantly, nearly one hundred images of child pornography. More concrete support for these findings comes directly from Mr. Leak. The report indicates that when interviewed by the OIG agents, "Leak admitted to viewing and downloading pornography onto his work computer, including child pornography." Rep. at 17. Leak then "admitted to attempting to erase the obscenity and child pornography files from his work computer." Id.

Finally, in the Rule 11 plea hearing, Special Agent Lefebvre testified that the images were *downloaded* from the Internet and that Leak acknowledged the images were on his

post office computer. Plea Tr. at 20. Immediately following that exchange, Mr. Leak stood in open court, asked no questions of Mr. Lefebvre, and pled guilty to the crime of possession of child pornography.

The United States Supreme Court holding in **United States v. X-Citement Video, Inc.**, 513 U.S. 64 (1994), and its progeny are also telling. In that case, the Supreme Court examined the term "knowingly" in the provision pertaining to "knowingly receiving" child pornography. 18 U.S.C. § 2252(a)(1) and (2). Therein, the Supreme Court held that the term "knowingly" as used in *that* section imposed a scienter requirement. Important to the instant case, this Court must emphasize that in the fifteen-plus years since **X-Citement Video**, no case has extended § 2252A(a)(5)(A), the statute under which Leak was charged, to include an element of scienter. Nor has Congress been compelled to add or clarify that any such intent is required. For example, the Seventh Circuit Court of Appeals in **United States v. Malik**, 385 F.3d 758, 760 (7th Cir. 2004), citing **X-Citement Video**, expressly rejected the premise that the receipt and possession offenses are substantially the same. While the "receipt offense requires proof that the defendant knew that the persons depicted were minors," "the possession offense lacks that scienter requirement . . .." **Id**. Likewise, in **United States v. Santacruz**, 563 F.3d 894, 897 (9th Cir. 2009), the Court noted "[t]he lack of a specific intent requirement in § 2252A(a)(5)(B) – which bars 'knowing[ ]' as opposed to willful, possession of child pornography – . . .."

Indeed, to establish that a person "knowingly" received child pornography, the Government must prove beyond a reasonable doubt that he or she had a "knowing acceptance or taking of possession" of child pornography. **United States v. Romm**, 455

F.3d 990, 1001 (9th Cir. 2006); **United States v. Mohrbacher**, 182 F.3d 1041, 1048 (9th Cir. 1999) ("An individual who downloads material takes possession or accepts delivery of the visual image; he has therefore certainly received it."). The offenses of possession and receipt are related, but are not identical. Every element of the crime of knowing possession is subsumed within the crime of knowing receipt. **United States v. Davenport**, 519 F.3d 940, 947 (9th Cir. 2008). Importantly, the added element of the receipt charge is that the Government must prove the requisite *mens rea* at the moment defendant took possession of the child pornography. *See* **United States v. Kamen**, 491 F.Supp.2d 142, 150 (D. Mass. 2007) ("Receipt equals possession plus the additional element of acceptance . . .."). Thus, one can knowingly possess child pornography without knowingly receiving it. This could occur, for instance, if a person's computer is infected with a virus or spyware which places images of child pornography on one's computer and one later comes to know that the child pornography is there. **United States v. Miller**, 527 F.3d 54, 62-63 (3d Cir. 2008). When the computer owner discovers the images, he will knowingly possess them, even though he did not knowingly receive them. *See* **United States v. Larson**, 558 F.Supp.2d 1103, 1107 (D. Mont. 2008).

It is this different mental state – i.e., defendant's state of mind at the time he came into possession of the child pornography – that is the only additional element that the Government must establish to prove knowing receipt of child pornography in addition to knowing possession of child pornography. Accordingly, it comes as no surprise that the "knowing receipt of child pornography" statute carries a much greater punishment than "knowing possession;" i.e., 20-year statutory maximum versus 10-year maximum,

respectively.

In this case, the defendant was charged with, and convicted of, knowing possession. He admitted that the child pornography existed on his work computer, that he viewed it, and that he subsequently attempted to delete it from his computer's hard drive. This, by itself, provides a sufficient basis to support his guilty plea. As previously noted, the Fourth Circuit agreed. By pleading guilty, the defendant waived his right to make the prosecution prove to a judge or jury beyond a reasonable doubt that the images were there. Accordingly, this argument fails.

### 2. 18 U.S.C. § 2252A(a)(5)(A) Specifically Provides an Affirmative Defense that is Inapplicable in this Case

Pursuant to 18 U.S.C. § 2252A(d), "[i]t shall be an affirmative defense to a charge of violating subsection (a)(5) that the defendant – (1) possessed less than three images of child pornography; and (2) promptly and in good faith . . . (A) took reasonable steps to destroy each such image; . . .." In this case, it was established by the defendant's own admission that he possessed well in excess of three pornographic images of minors. Indeed, the parties stipulated that the defendant's total relevant conduct consisted of eighty-nine (89) such images. Accordingly, counsel correctly informed his client that this affirmative defense was not available to defendant Leak.

More importantly, this defense tends to show an intent by Congress to provide a limited protection in cases where the images truly may have been "knowingly possessed" by accident or mistake. This Court reads the same to infer that Congress foresaw such possibility of download by mistake; however, insofar as Congress recognized that the greater the number of images, the less weight this defense carries, it decided to draw a line

at some point.  In so doing, Congress decided that number is three.

### 3.     The Rule 11 Plea Colloquy Adequately Informed the Defendant of the Elements of the Charged Offense

A review of the transcript reveals, in relevant part, that the magistrate judge covered the elements of the offense to which defendant Leak pled guilty.  Therein, the magistrate judge inquired:

> "You're charged in Count 1 with possession of child pornography in violation of Title 18 United States Code Section 2252A(a)(5)(A), which provides in pertinent part, any person who knowingly possesses any material that contains an image of child pornography that has been mailed or shipped or transported in interstate or foreign commerce by any means, including a computer, shall be punished as provided in Section B.  Do you understand that that's the statute under which you are going to plead today?"

The defendant responded in the affirmative.  Plea Tr. at 11.

Moreover, the magistrate judge inquired of the defendant whether he "knew the visual depiction was of a minor engaging in sexually explicit conduct," to which the defendant also answered in the affirmative.  Id.

"The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal.  Although this determination is often made based on adequacy of the plea colloquy - specifically, whether the district court questioned the defendant about the appeal waiver - the issue ultimately is evaluated by reference to the totality of the circumstances.  Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused."  ***United States v. Blick***, 408 F.3d 162, 169 (4th Cir. 2005).

The transcript from the Rule 11 plea colloquy indicates the magistrate judge stated the elements of the crime to which the defendant was pleading, which includes the phrase "knowingly possess." This was all that was required since no element of intent exists.

Additionally, at the Rule 11 hearing, the Government called Inspector Karyn Lefebvre, an Inspector General with the United States Postal Inspection Service, to testify as to what she discovered on the defendant's work computer. She indicated that she had an opportunity to interview defendant Leak, and he acknowledged that the illegal images were on his computer. Again, at sentencing, Mr. Leak admitted possession of child pornography by stating, "[o]nce I obtained those images, I did my best to have them deleted." Sent. Tr. at 9.

Furthermore, the record indicates that defense counsel expressly informed defendant Leak that his possession and knowledge that the images existed on his computer satisfies the "knowledge" element. Indeed, at sentencing, defense counsel, Mr. Bottner, stated "it was due to Mr. Leak's attempts to delete . . . these images from his work computer [which lead to the investigation]. That does not lessen the crime that occurred, but I think [it] does go to some extent to . . . his knowledge of the fact that he did not want these pictures. That does not really affect us though in the overall situation reading of the statutory law. And the case law would indicate that just mere possession and knowledge of that, and he certainly knew he possessed them, makes him guilty." Sent. Tr. at 7 (emphasis added). Defense counsel's concluding statement indicated that "[Mr. Leak] has no defense. [The pictures] were there." Id. at 8. Defense counsel could not have summarized the elements any better.

**B.      Claims of Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel, the petitioner must establish that (1) counsel's conduct fell below an objective standard of reasonableness and (2) the petitioner was prejudiced by counsel's deficient performance.  ***Strickland v. Washington***, 466 U.S. 668, 687 (1964).  Furthermore, of particular importance to such analyses, the Fourth Circuit has noted there exists no absolute rules in determining what is reasonable performance under ***Strickland*** because counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct.  *See **Hunt v. Nuth***, 57 F.3d 1327, 1332 (4th Cir. 1995).

Here, the defendant raises several grounds in support of his ineffective assistance of counsel claims which were not intertwined with those already addressed in Section A above: (1) that counsel failed to accurately inform the petitioner about the possible guideline sentence he would receive; (2) that counsel failed to investigate the petitioner's suggestions for possible mitigating evidence for sentencing; and (3) that counsel failed to advocate for the petitioner by (a) presenting no mitigating evidence, (b) failing to file any objections to the PSR, (c) failing to request a variance, (d) not presenting any "real oral argument" on petitioner's behalf, and (e) failing to object to multiple "improper" guideline enhancements.  In the R&R, the magistrate judge found each of the above to be without merit.  In his Objections to the R&R, the petitioner has essentially objected to every portion thereof.  Accordingly, this Court will address the same in turn under a *de novo* standard of review.

## 1. Counsel's assistance was not ineffective by failing to accurately inform the petitioner about the possible guideline sentence

The Probation Office prepared a thorough Pre-sentence Investigation Report ("PSR") for the parties' review and this Court's consideration. Correctly applying the 2007 edition of the Guidelines Manual, the PSR undertook an Offense Level Computation as to Count One, Possession of Child Pornography. Based thereon, this Court announced its tentative findings as to the applicable guidelines. Subsequent to this recitation, this Court inquired of counsel as to any objections to the tentative findings. No objections having been made, the Court ruled that the guidelines as announced would be the guidelines applicable to defendant Leak's sentence. Specifically, this Court found a base offense level of 18; plus a two-level enhancement for involvement of a prepubescent minor; a four-level enhancement for the type of depictions in the materials; a two-level enhancement for use of a computer; a two-level enhancement for the number of images involved; and a two-level enhancement for a breach of trust as a United States Postmaster; resulting in a total adjusted offense level of thirty (30). This was reduced by three (3) levels for acceptance of responsibility, resulting in a total offense level of 27. This Court found the criminal history category to be 1. Accordingly, with a total offense level of 27, and a criminal history category of 1, the guidelines called for incarceration of 70-87 months.

The petitioner alleges ineffective assistance of counsel based upon defense counsel's failure to specifically object to the enhancements for breach of trust, possession of sado-masochistic images, and possession of an image involving a prepubescent minor. Petitioner further asserts that the objective standard of reasonableness is heightened in child pornography cases, citing the "myriad of specific offense enhancements" which may

apply in such cases [Doc. 100 at 18].  Without making any determination as to this asserted heightened standard, this Court finds counsel was not ineffective.

Here, the petitioner implies that defense counsel simply "fail[ed] to investigate the appropriate guideline calculations[, which] is not a permissible reason not to object."  Id. at 19.  Noting defense counsel's failure to voice objections, the petitioner delves into attorneys' duties to their clients to understand the federal sentencing guidelines and to research them to ensure that they are properly applied.  Id.  In the same breath, however, the petitioner concedes that "the record is silent as to the reason why petitioner's counsel failed to object to the guideline calculations . . .."  Id.

This Court, in fact, did impose a myriad of enhancements in this case.  The fact that such enhancements may be, and were, properly applied, however, does not render counsel's failure to object to the same ineffective representation.  What petitioner overlooks, as will be shown below, is that there were no meritorious objections to be raised.

The petitioner fails to articulate any concrete facts to support his assertion that defense counsel "d[id] not investigate to get enough information to make an informed strategic decision" as to why he posed no objections, thereby "[m]aking an uninformed decision"; however, the petitioner, on the other hand believes "[he] can proffer that there is significant reason to believe that these guideline enhancements should not have been applied."  Id. at 24.

The petitioner begins his argument by noting that the Government originally contended that approximately 106 images or .jpeg files of child pornography existed on the defendant's computer.  The petitioner then notes that there is no record as to which of the

88[2] of the original 106 images were being included as relevant conduct. Therefore, he concludes defense counsel never viewed the images. What the petitioner fails to acknowledge is that defense counsel did, in fact, hire a computer forensic expert to examine the images pre-plea. The record indicates that defense counsel sought this Court's permission to incur expenses to hire Robert G. Downey, which this Court granted [Doc. 25]. The docket further reflects that the defendant's expert, Downey, provided services over more than a one month period between November 15, 2007, to December 21, 2007 [Doc. 39]. This Court notes the Government's expert, Special Agent Russell S. Strasser's, report containing his findings as to the sexual maturity ratings was prepared June 5, 2006. As such, Leak's expert would have had sufficient time to put SA Strasser's findings under the microscope. This Court does not find it coincidental that the defendant signed his plea agreement at about the same time his expert concluded his analysis.

Based on SA Strasser's report, it was no secret that he opined that two (2) images depicted children in the 8-12 year-old range. Similarly, Dr. Lasure, who provided his findings to the Probation Office, found one image of "a prepubescent minor, and or a minor under the age of 12 years . . .." (PSR at ¶ 28).

Next, SA Strasser's report found many examples of images depicting "obvious young children performing sexual acts . . .." Likewise, Dr. Lasure found a "series of images entitled '.jpgs 7857-7921' depict[ing] sado-masochistic 'rape' of a 15 to 16 year old female." (PSR at ¶ 30).

Dr. Lasure used the Tanner Stages in his analysis to determine the approximate

---

[2] The PSR, plea agreement, and transcripts all provide that the correct stipulated relevant conduct is 89 images.

ages of the minors depicted in these images. The petitioner argues that defense counsel was ineffective by failing to hire an expert to refute Dr. Lasure's findings. However, the existing expert opinions were not in conflict.

Next, this Court also finds unavailing the petitioner's contention that counsel was ineffective for failing to object to the enhancement for abuse of position of trust. In this Circuit, "a district court must increase the defendant's sentence by two levels if it determines that the defendant abused a position of trust and that abuse significantly contributed to the commission of the crime." *United States v. Akinkoye*, 185 F.3d 192, 203 (4th Cir. 1999).

The *Akinkoye* Court established the following factors to consider when determining whether a particular defendant abused a position of trust:

> (1) whether the defendant had either special duties or special access to information not available to other employees; (2) the extent of discretion the defendant possesses; (3) whether the defendant's acts indicate that he is more culpable than others who are in positions similar to his and who engage in criminal acts; and (4) viewing the entire question of abuse of trust from the victim's perspective.

*Id.* at 203.

As previously noted, at all relevant times the defendant was the postmaster at the Falling Waters, West Virginia Post Office. It was on his work computer that the pornographic images were discovered. The PSR indicated that "as postmaster, the defendant enjoyed professional and/or managerial discretion and was subject to less supervision than other employees, which facilitated in the commission of the offense."

16

(PSR at ¶ 33).  The Government argues that this position made detection of the criminal activity more difficult. [Doc. 84 at p. 20].  The petitioner, on the other hand, argues that "rather than facilitating the possession crime, petitioner's use of the work computer significantly contributed to his eventual conviction."  [Doc. 100 at p. 37].  Finally, with respect to "viewing the entire question . . . from the victim's perspective," *Akinkoye*, 185 F.3d at 203, the Government argues that this Circuit has viewed the term "victim" in similar circumstances as "society in general."  *See United States v. Toler*, 901 F.2d 399, 403 (4th Cir. 1990)(interpreting the term "victim" in context of 18 U.S.C. § 2252 – receipt of child pornography).  The petitioner suggests a narrower view of the term "victim," limiting the same to "the child[ren] that [are] portrayed in the pornography." (Doc. 100 at p. 38).  *See Osborne v. Ohio*, 495 U.S. 103, 110-11 (1990).

Applying the above to the four-factor test in *Akinkoye*, this Court notes its several observations.  First, this Court finds the petitioner, as supervisor, exercised both special duties or access to information not available to other employees and that he exercised a seemingly limitless amount of discretion in that office.[3]

The third factor is likewise met because of the extent of the petitioner's ongoing criminal activities.  Over a lengthy span, the petitioner was able to download several thousands of images onto his work computer undetected.  This flagrant behavior was likely able to continue based upon his position as supervisor, which left him subject to little

---

[3]  While not dispositive of the instant inquiry, this Court simply notes that Counts 2-83 of the Indictment [Doc. 1] allege various acts of misappropriation of funds by stealing money orders to pay certain family members, his wife, girlfriend, etc. for an array of "services" rendered, as well as taking sums of cash from the Post Office, all for which the defendant is now making restitution in the amount of $13,509.77.

supervision.  Thus, this Court finds petitioner more culpable than other staffers at the Post Office.

Finally, while the parties argue over the definition of "victim" in such cases, this Court would arrive at the same conclusion regardless of which it accepted.  Specifically, with regard to the "view from the victim's perspective," this Court finds the issue tips in favor of the Government.  Clearly, by the petitioner's own admission, he did view the images of the children, thereby perpetuating the harm suffered each and every time such images are viewed.  While the specific identities of the children depicted in these images are not known, the harm nevertheless "continu[es to] haunt[] the children in years to come." *Osborne*, 495 U.S. at 110-11.

### 2.    Counsel was not ineffective at sentencing regarding failure to request a variance sentence based on § 3553(a) considerations

The petitioner objects to the magistrate judge's finding that defense counsel was not ineffective by failing to argue for a variance sentence.  Petitioner suggests a "panoply of Section 3553(a) arguments that could have been made . . .." [Doc. 100 at p. 41].  For instance, petitioner asserts that at the time of sentencing "many courts were issuing orders granting variance sentences based upon policy disagreements with the child pornography possession guideline."  Id. at 42 (citing cases which granted downward variances based on belief that the guidelines are unsound and not based on empirical research).  While several courts have exercised their discretion to entertain such policy-based arguments presumably in the wake of *Kimbrough v. United States*, 552 U.S. 85 (2007), while recognizing its ability to do the same, this Court respectfully declines to.  Nor does this Court hold that the mere availability of such arguments necessarily obligates counsel to

18

offer them.

This Court notes that the sentence imposed was the low end of the guideline range. Accordingly, it borders on the absurd to argue that the defendant was "prejudiced." *See Strickland*, 466 U.S. 668, 691-92. Even assuming, *arguendo*, that counsel was in error, such "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies . . . must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.*

In *United States v. Raby*, 575 F.3d 376 (4th Cir. 2009), the Court found that imposition of an individualized sentence through application of the guidelines and § 3553(a) factors is appropriate. In petitioner's case, this Court considered all the factors set forth in 3553(a), and despite the defendant's complete lack of criminal history, nevertheless found the crime to which he pled to be of a very serious and disturbing nature. Therefore, this Court found the sentence of 70 months – the lowest end of the guideline range – adequately addressed the stated sentencing objectives. In so finding, this Court additionally considered the defendant to be a threat to the community and one who need be held accountable for his actions.

Furthermore, defense counsel specifically acknowledged at sentencing that no formal motion for variance sentence was raised; however, he followed that statement by alerting this Court that Mr. Leak requested nothing of counsel regarding the images other than to provide Leak an opportunity to apologize and accept responsibility for his actions. In so doing, Mr. Leak expressed to this Court his attempts to delete the images as soon as

he obtained them. Additionally, Leak noted that as a father of three he deplores the abuse of children and has no interest in child pornography.

In light of the above, this Court, in its discretion, and armed with the full knowledge of the sentencing guidelines, found the appropriate sentence of 70 months. It cannot be said that the petitioner was prejudiced by any of counsel's alleged shortcomings.

## IV.   Conclusion

Upon careful review of the R&R, it is the opinion of this Court that the magistrate judge's Opinion/Report and Recommendation **[Crim. Doc. 98 / Civ. Doc. 2]** should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated in that report. Further, the petitioner's Objections **[Crim. Doc. 100]** are **OVERRULED**. Accordingly, the petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody  **[Crim. Doc. 73 / Civ. Doc. 1]** is hereby **DENIED** for the reasons stated above. As such, the same is hereby **DISMISSED WITH PREJUDICE** and **ORDERED STRICKEN** from the active docket of this Court. Finally, upon an independent review of the record, this Court hereby **DENIES** a certificate of appealability, finding that the petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: July 20, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE